FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 MAY 15  PM 12: 16

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Rachel Miller Yasser*
*Assistant United States Attorney*
*Rachel.Yasser@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4922*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

March 27, 2015

**VIA EMAIL**
Kush Arora, Esq.
10300 Garden Way
Potomac, MD 20854-3970

Re:  Plea Agreement in the matter of United States v. Ryan C. Anton, RDB 15-053

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 10, 2015, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1. The Defendant agrees to plead guilty to Count Two of the Indictment now pending against him, which charges him with Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. §2423(b). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. that on or about the date charged in the Indictment, the Defendant knowingly traveled in interstate and foreign commerce;

    b. that the travel was for the purpose of engaging in illicit sexual conduct; and,

1

c.	that the illicit sexual conduct was with a person under 18 years of age.

## Penalties

3.	The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: not more than 30 years of incarceration, lifetime supervised release, and a $250,000 fine. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed. The defendant understands and agrees that as a consequence of his conviction for the crime which he is pleading guilty, he will be required to register as a sex offender, and to keep that registration current, in the place where he resides, where he is employed, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may violate the terms of his supervised release and subject him to new criminal charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

4.	The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.	If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.	If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

---

[1]	Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

3

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a.  Pursuant to U.S.S.G. § 2G1.3(a)(4), the base offense level is **24**.

   b.  Pursuant to U.S.S.G. § 2G1.3(b)(3)(B), there is a **2** level increase because the offense involved the use of a computer to entice, encourage, offer, or solicit a person to engage in prohibited sexual contact with the minor. (**Subtotal = 26**)

   c.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**Thus, the total adjusted offense level is 23.**

7.  The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.  This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Rule 11 (c) (1) (C) Plea

9.  The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of **seven years (84 months) imprisonment** to be served in the custody of the Bureau of Prisons, to be followed by a period of **ten years of supervised release**, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the

4

agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will move to dismiss Count One of the Indictment, which carries a ten year (120 month) mandatory minimum sentence.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Rule 11(c)(1)(C) Plea

12. The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: **a sentence of eighty-four (84) months of incarceration followed by 10 years of supervised release.** For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement. This agreement does not affect the Court's discretion to impose any lawful fine or restitution. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Specifically, the Defendant may withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A) if the Court wishes to impose a sentence in excess of seven years (84 months) and the government may withdraw from the plea agreement if the Court wishes to impose a sentence below seven years (84 months) and/or the sentence does not include the period of supervised release prescribed herein. In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

## Forfeiture

13. The defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order will include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property subject to forfeiture. Specifically, as a consequence of the Defendant's plea of guilty, the court will order the forfeiture of any property used or intended to be used to commit or to facilitate the commission of the offense, pursuant to 18 U.S.C. § 2428. The property to be forfeited includes but is not limited to the following:

    a.    Apple I Phone 5/S no serial number
    b.    Acer Chromebook C720 S/N NXSHEAA011419060457600

      c.      Sandisk Cruzer Glide 16GB USB Drive, S/N SDCZ-016C
      d.      Three DVDs
      e.      One CD
      f.      HP Pavillion G6 Series Laptop Computer S/N: 00196-180-622-98Z
      g.      HP Pavillion G6 series Laptop Computer S/N: 00196-178-416-960
      h.      Western Digital External Hard Disk Drive S/N WCAU4D659021

14. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Assisting the Government with Regard to the Forfeiture

15. The defendant agrees to assist fully in the forfeiture of the foregoing assets. The defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The defendant also agrees to give this Office permission to request and review his federal and state income tax returns, and any credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) as well as whatever disclosure form may be required by any credit reporting entity.

### Waiver of Further Review of Forfeiture

16. The defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

        b.        The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.        Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.        The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

18.        The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

19.        The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C).

## Entire Agreement

20.        This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements,

7

promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Rachel Miller Yasser
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5/15/15
_____
Date

_____
Ryan C. Anton

I am Mr. Anton's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

5/15/15
_____
Date

_____
Kush Arora, Esq.

**Attachment A**
**Statement of Facts**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

The defendant, Ryan C. Anton ("ANTON"), was 41 years old at the time of the offense, and a resident of Pennsylvania.

In July 2014, Baltimore City Police was conducting undercover operations via the Internet to identify individuals targeting minors online for sexual exploitation. A detective, acting in an undercover capacity, placed an advertisement on Craigslist personals. Beginning on July 23, 2014, ANTON initiated text messaging with the detective acting in an undercover capacity as "Heidi" whom ANTON believed was a 14 year old, hearing-impaired female who was in the 10th grade. The detective began chatting and exchanging emails with ANTON. After a series of sexually-explicit text message exchanges over a period of weeks, including the solicitation of pornographic images from "Heidi," ANTON was arrested when he traveled to Baltimore, Maryland for the purpose of meeting, and having sex with, "Heidi."

The text messages included a conversation on July 26, 2014, between "Heidi" and ANTON. ANTON asks if "Heidi" has ever "cum" before and made it clear he wanted to make "Heidi" "cum". ANTON also attempted to persuade "Heidi" to produce a video of herself to send to him. ANTON was specific about what he wanted "Heidi" to do in the video. The following is an excerpt of this conversation:

| | |
|---|---|
| From ANTON | So how to u feel about phone sex? |
| From Heidi | I mean I can text |
| From ANTON | Ok so we can text sex only. **Could u make a video then delete it?** |
| From Heidi | Make a video? |
| From ANTON | **Like if I turn u on and then u wre ur clit and videoed that for me?** |

Later in the July 26 text conversation, ANTON talked about taking "Heidi" to lunch when he traveled to Baltimore and, when they were done with lunch, they would then go back to her house and have sex. During this portion of the chat conversation, ANTON sent a picture of his genitals to "Heidi" and asked her if it will "fit nicely inside u?" "Heidi" asked if ANTON would wear a condom and he replied he would if she "needs" him to.

On July 30, 2014, another text conversation took place between ANTON and "Heidi". ANTON suggested "Heidi" ride the train to DC to meet him where he would be staying overnight on August 29, 2014, to catch a train from DC to Chicago.

On August 4, 2014, during a text conversation between ANTON and "Heidi", ANTON

1

sent numerous images of adult pornography involving an adult male and adult female in various sexual positions. ANTON also asked "Heidi" about bringing and using condoms when they had sex. The following is an excerpt of this conversation:

| | |
|---|---|
| From ANTON | Haha ok im gonna slowly strip u and kiss u all over after our shows, then we can do it missionary and then rest bc it will be a big deal as ur first time |
| From ANTON | Then we will show and do it again and agzain, especially u riding me so you can be in control |
| From Heidi | K cool missionary ? |

At this point in the text conversation, ANTON sent a picture of an adult male and an adult female engaged in sexual activity, specifically in the missionary position. ANTON then sent several other images of adults engaged in sexual activity in different positions. During this conversation, ANTON also asked if "we can ever try this" and sent an image of an adult male and female engaged in anal sex. The following is an excerpt of this conversation:

| | |
|---|---|
| From ANTON | We can ever try this |
| From Heidi | Wow that looks hard to do is it? |
| From ANTON | The first time im gonna be slow and patient; in fact all night, or first time. U cant know everything; how can u? |
| From ANTON | No its easy; ur limber and we will go slow |
| From Heidi | Ok I trust ya |

ANTON asked "Heidi" where she would be on her "cycle" and also asked about bringing condoms and using condoms when they have sex. The following is an excerpt of this conversation:

| | |
|---|---|
| From ANTON | Can u figure out where u will be on your cycle? |
| From Heidi | Yes I am getn ready to start it this weekend. |
| From ANTON | I care about u girl and i want to see u way more than just that ine night!;) |
| From ANTON | Do u want me to use condoms or not? |
| From Heidi | idk what do u think? |
| From ANTON | I hate them but I'll bring them in case. Id much rather cum inside u so u can feel me spray inside u. |

ANTON and "Heidi" had a further text conversation on August 28, 2014 during which ANTON asked "Heidi" if she was nervous and expressed concern over being caught. The following is an excerpt of the text conversation:

| | |
|---|---|
| From ANTON | Are u nervous? |
| From Heidi | Nope well mayb a little how bout u |
| From ANTON | About 10% but only bc we've never met and i dont want to be on "to catch a predator". I would never meet a girl from the internet but u seem so cool, and |

2

|  |  |
|---|---|
|  | kind. |
| From ANTON | and fun |
| From Heidi | Lol what is to catch a predator anyways |
| From ANTON | It was a tv show where older guys would drive to meet young girls they met on the internet to have sex with and itd be cops and they'd get arrested |

On August 29, 2014 a text conversation took place between ANTON and "Heidi" wherein ANTON relayed he was on the bus, provided the bus number and attempted to convince "Heidi" to come onto the bus.

Baltimore City Police Detectives assisted by HSI Baltimore Special Agents boarded the bus and located Ryan ANTON. ANTON was escorted from the bus and his luggage was identified and retrieved. ANTON was arrested and transported to Baltimore City Police Headquarters. ANTON was read his Miranda warnings, signed a waiver of his Miranda rights, and agreed to speak with law enforcement. During the interview, which was videotaped, ANTON was told the father of "Heidi" had reported their telephone text relationship to the police and that was why he had been arrested.

ANTON admitted he knew "Heidi" was 14 years old. He admitted he had been chatting with her via cell phone and that he had answered a Craigslist ad she had placed. ANTON admitted to bringing condoms because "Heidi" had mentioned it and he felt it was the safe way "to do it". ANTON stated the plan was for "Heidi" to get on the bus with him travel to DC where he had booked a hotel room for the night, to take showers, have dinner and later go back to the room and give each other back rubs and then have sex if "Heidi" was comfortable with having sex. ANTON admitted he told "Heidi" he would pay for her bus ticket up and back from DC because he "knows a kid would not have a lot of access to money." ANTON admitted he sent several images of people in different sexual positions. ANTON stated that since "Heidi" was inexperienced, she would not know the different sexual positions. ANTON stated that he had told "Heidi" that since it was her first time having sex it would likely be bloody and he wanted to avoid a mess. ANTON admitted he brought several gifts for "Heidi" including a "cammie" top and bottom to sleep in, thongs and nail polish.

ANTON provided consent for law enforcement to search the bags that ANTON had when he was arrested in Maryland and the police recovered condoms and the underwear and other gifts for "Heidi" as described by ANTON.

3

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____
Ryan C. Anton


I am Mr. Anton's attorney. I have carefully reviewed the statement of facts with him.

_____
Kush Arora, Esq.

4